## STATE OF CONNECTICUT *v.* ROBERT BROWN
### (AC 31598)

DiPentima, C. J., and Lavine and Sullivan, Js.

Argued February 16—officially released June 21, 2011

*Katherine C. Essington,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* senior assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Michael A. DeJoseph,* assistant state's attorney, for the appellee (state).

DiPENTIMA, C. J. The defendant, Robert Brown, appeals from the judgment of conviction, rendered following his conditional plea of nolo contendere, pursuant to General Statutes § 54-94a, of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a) and possession of a narcotic substance with intent to sell within 1500 feet of an elementary or secondary school in violation of General Statutes § 21a-278a (b). The dispositive issue in this appeal is whether the trial court improperly denied the defendant's motion to suppress evidence because his girlfriend, Patricia Armstrong, did not voluntarily consent to a search of her apartment where the defendant's drugs where found.[1] We affirm the judgment of the trial court.

In denying the motion to suppress, the court found the following relevant facts. "On July 15, 2008, the narcotics division of the Bridgeport police department was conducting an investigation into narcotics trafficking. On that date, Lieutenant [Christopher Lamaine], [Officer Barbara] Gonzalez . . . and others were assigned to the area of Williston and Bunnell Streets. Based upon information received by [another officer], they were advised to converge on a tan Honda Accord at the corner of Williston and Bunnell. . . . Lamaine was the first to approach the vehicle. It had only a single occupant, Patricia Armstrong, who was seated in the driver's seat. As he approached the vehicle . . . Lamaine saw . . . Armstrong stuff a sandwich baggie containing what . . . Lamaine was sure was narcotics down the front of her jeans. She was removed from the vehicle, handcuffed and placed under arrest. . . .

---

[1] The defendant and the state agree that if we determine that the court's finding was not clearly erroneous that Patricia Armstrong voluntarily consented to a search of her apartment, then we need not reach the defendant's other claims that he and another individual did not consent voluntarily.

"Gonzalez, a female officer, arrived at the stop within moments. She was instructed by . . . Lamaine to search . . . Armstrong incident to her arrest and to retrieve the narcotics from inside her pants. . . . Gonzalez was able to see the edge of the sandwich baggie. She pulled it out and recovered five bags of what turned out to be heroin. . . . Armstrong was then placed in the back of . . . Gonzalez' police vehicle. This was an unmarked Crown Victoria. The weather was warm, but the air conditioning in the car was on. . . . Lamaine got into the vehicle with . . . Armstrong and . . . Gonzalez. . . . Lamaine advised . . . Armstrong of her *Miranda*[2] rights, and she agreed to speak with him.

"During the discussion that followed . . . Armstrong indicated that her boyfriend had given her the heroin to deliver, her boyfriend being the defendant, and that there was likely more heroin in the apartment, which she identified as 581 Connecticut Avenue, second floor. She then verbally gave . . . Lamaine permission to search the apartment. Thereafter . . . Gonzalez reviewed a preprinted consent to search form commonly used by the narcotics division. She read the form verbatim to . . . Armstrong. . . . Armstrong signed the consent to search. . . . Gonzalez witnessed the signing and thereafter gave the form to . . . Lamaine. During this time period . . . Armstrong is described as upset and concerned but not unreasonably so and on par with other people who have been arrested." On the basis of these facts, the court determined that Armstrong voluntarily consented to a search of the apartment.

The police went to the address identified by Armstrong and entered the apartment. While securing the

---

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

apartment, the police found the defendant in Armstrong's bedroom. Lamaine told the defendant that Armstrong had been arrested "with heroin and had given consent to search the apartment. At this point, the defendant offered that the [heroin] was his [and] that he had sent [Armstrong] to deliver it. He was stopped [and] advised of his *Miranda* rights . . . ." Then, the defendant signed a consent to search form.[3] Following the defendant's directions, Lamaine found twenty-seven bags of heroin inside a bag of uncooked rice in a storage bin.

On the basis of these findings, the court denied the defendant's motion to suppress. The court found that Armstrong's consent was voluntary, and, therefore, that the warrantless search was not unreasonable. On May 5, 2009, the defendant entered a plea of nolo contendere, conditioned on his right to appeal from the court's denial of his motion to suppress. The court accepted the defendant's plea and rendered judgment accordingly. The court sentenced him to a total effective term of fifteen years imprisonment, execution suspended after seven and one-half years, with five years of probation. This appeal followed.

As a preliminary matter, we address the defendant's standing to challenge the validity of Armstrong's consent to search.[4] "The touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place." (Internal

[3] At Lamaine's request, the defendant signed the same consent form as Armstrong. Lamaine noted the time that the defendant signed the consent form to make clear that the defendant did not sign it at the same time as Armstrong, but Lamaine did not sign the consent form as a witness to the defendant's signature.

[4] We have raised the issue of standing sua sponte.

quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 718, 992 A.2d 1071 (2010), cert. denied, U.S. , 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011). At the suppression hearing, Armstrong testified that she lived at 581 Connecticut Avenue in Bridgeport with her sister-in law, Lisa Rivera, and at the time of the search the defendant would stay at her house three to four times a week with her permission. Rivera also testified that on the night prior to the search, the defendant slept in Armstrong's bedroom and was there with permission to stay in the home. This testimony was uncontested by the state. The defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the [host's] home that society is prepared to recognize as reasonable." *Minnesota* v. *Olson*, 495 U.S. 91, 96–97, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990); see also *State* v. *Brosnan*, 221 Conn. 788, 809, 608 A.2d 49 (1992). Under facts less compelling than those in the present case, this court previously has determined that a defendant may claim the protections of the fourth amendment inside his host's home. See *State* v. *Carter*, 22 Conn. App. 118, 122–23, 576 A.2d 572 (1990). We, therefore, conclude that the defendant has standing to challenge the constitutionality of the police search of Armstrong's residence.

The defendant does not dispute that Armstrong, a resident of the apartment in which the officers found the drugs, had the authority to consent to the officers' search of the apartment. Nor does the defendant claim that the trial court erroneously credited the testimony of the police officers and did not credit, to the extent that their testimony contradicted the police officers, the testimony of the defendant's witnesses. Rather, the defendant claims that the totality of the circumstances under which Armstrong signed the consent to search form was coercive so that the court's finding that Armstrong's consent was voluntary was clearly erroneous. We disagree.

We first set forth our standard of review and the legal precepts that guide our analysis. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Jenkins*, 298 Conn. 209, 222, 3 A.3d 806 (2010). "A warrantless search is not unreasonable under . . . the fourth amendment to the constitution of the United States . . . if a person with authority to do so has freely consented to the search. . . . The state bears the burden of proving that the consent was free and voluntary and that the person who purported to consent had the authority to do so. . . . The state must affirmatively establish that the consent was voluntary; mere acquiescence to a claim of lawful authority is not enough to meet the state's burden. . . . The question whether consent to a search has in fact been freely and voluntarily given, or was the product of coercion, express or implied, [as well as whether the individual providing consent possessed the requisite authority] is a question of fact to be determined from the totality of all the circumstances. . . . As a question of fact, it is normally to be decided by the trial court upon the evidence before that court together with the reasonable inferences to be drawn from that evidence. . . . We may reverse [the trial court's factual] findings on appeal only if they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Azukas*, 278 Conn. 267, 275, 897 A.2d 554 (2006).

"[T]he state had the burden of proving the voluntariness of the consent to the search by a preponderance of the evidence." *State* v. *Jenkins*, supra, 298 Conn. 249 n.32. "In determining whether a defendant's will was overborne in a particular case, the [c]ourt has assessed the totality of all the surrounding circumstances—both

the characteristics of the accused and the details of the interrogation." Id., 250–51. "[T]he test is fact specific, so that, ultimately, the determination of whether the consent was voluntary rests on a careful consideration of the totality of the relevant circumstances." *State* v. *Courchesne*, 296 Conn. 622, 658, 998 A.2d 1 (2010).

The trial court found that Armstrong voluntarily had consented to the search of the apartment. The court found that after being arrested, Armstrong was placed in the back of Gonzalez' police car. The weather was warm, but the air conditioning was on in the car. After being advised of her *Miranda* rights, Armstrong agreed to speak with Lamaine. When Lamaine was questioning Armstrong, Gonzalez was the only other person in the car. The court credited Gonzalez' version of the events taking place in the car. Gonzalez testified that Armstrong did not appear to be confused or under the influence of any drugs at the time she gave her consent to search the apartment. Gonzalez also testified that neither she nor Lamaine threatened or induced Armstrong to consent to a search of the apartment, and that Armstrong appeared at the time to do so voluntarily. After Armstrong agreed verbally to Lamaine's request for permission to search her apartment for drugs, Gonzalez read a standard consent to search form to Armstrong that included a statement that Armstrong had the right not to consent. Armstrong signed the consent form.

The defendant does not challenge these findings surrounding Armstrong's signing the consent to search form. Rather, the defendant argues that the court failed to consider other factors that coerced Armstrong into giving consent. The defendant claims that Armstrong could not have voluntarily consented to the search because at the time that Lamaine was questioning Armstrong, she was handcuffed in the back of a police car, with several police officers at the scene, and she was

asked to consent to the search only a few minutes after she was placed under arrest.

"[T]hat consent to search is given while a [person] is being detained does not render it involuntary per se, as 'the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search.' *United States* v. *Watson*, 423 U.S. 411, 424, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976) . . . ." (Citations omitted.) *State* v. *Jenkins*, supra, 298 Conn. 251–52; see also *State* v. *Adams*, 176 Conn. 138, 142–43, 406 A.2d 1 (1978) (whether suspect technically in custody not determinative of finding that he voluntarily consented). In *United States* v. *Watson*, supra, 413, shortly after being arrested, the defendant was read his *Miranda* rights, and the investigating officer asked for the defendant's consent to search his car. The defendant replied: " 'Go ahead' . . . ." Id. The United States Supreme Court concluded that in the absence of any allegations or proof of threat by the arresting officer, being taken into custody has never been by itself enough to create a coercive environment. Id., 424.

As stated previously, the court found that Armstrong's consent was voluntary where she was arrested, handcuffed, and placed in the back of a police vehicle. The mere fact that Armstrong was under arrest at the time that she consented to a search of the apartment is not enough to create a coercive environment. As in *Watson*, the police read Armstrong her *Miranda* rights prior to questioning her or asking her for consent to search. Although Armstrong did testify that Lamaine threatened to have the department of children and families remove her grandchildren from the home, the court did not find Armstrong's testimony credible and concluded that the police did not make any threats.

A person may voluntarily consent to a search even while handcuffed. *United States* v. *Comstock*, 531 F.3d

667, 677–78 (8th Cir.) (trial court not clearly erroneous in finding consent voluntary where defendant signed consent to search form after being handcuffed for two hours), cert. denied, 555 U.S. 1020, 129 S. Ct. 590, 172 L. Ed. 2d 445 (2008). While we recognize that being handcuffed can be a factor in determining if consent was voluntary; see, e.g., *State* v. *Stephenson*, 99 Conn. App. 591, 597–98, 915 A.2d 327, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007); this court previously has concluded that a defendant's consent to a search of his car was voluntary where he was arrested, handcuffed and placed in the back of a police cruiser despite not having been read his *Miranda* rights. See *State* v. *Winot*, 95 Conn. App. 332, 336, 349, 897 A.2d 115 (2006), rev'd in part on other grounds, 294 Conn. 753, 988 A.2d 188 (2010).

The testimony of the witnesses, as credited by the trial court, supports the conclusion that Armstrong was subjected to far less coercive pressure than the defendants in *Winot* and *Comstock*, who were found to have consented voluntarily. The defendant in *Winot* was not read his *Miranda* rights and was asked orally by the police for permission to search his car after being arrested, handcuffed, and placed in the back of a police car. See id. Lamaine informed Armstrong of her *Miranda* rights prior to asking her to consent to a search of the apartment. Gonzalez also read the consent to search form to Armstrong, which informed Armstrong of her "constitutional right not to have a search made without a search warrant and [her] right to [r]efuse to consent to such a search . . . ." The defendant in *Comstock* was asked to sign a consent to search form after having been handcuffed for two hours, during which time the handcuffs were alleged to have caused him pain. *State* v. *Comstock*, supra, 531 F.3d 673, 677–78. Armstrong did not testify that the handcuffs hurt her, and Gonzalez testified that Armstrong was handcuffed

for only five minutes before signing the consent to search form.

As to the defendant's claim that the court did not properly consider the number of police officers present at the scene in determining if Armstrong's consent was voluntary, we disagree. The exact number of officers at the scene is not clear from the record, but the court found that there were at least five officers at the scene of Armstrong's arrest. The defendant cites the testimony of a witness credited by the trial court to conclude that there were at least eight police officers at the scene. Even assuming that eight officers were present at the scene, this does not weigh in favor of a finding that Armstrong's consent was involuntary. *See United States v. Jones*, 523 F.3d 31, 38 (1st Cir.) (presence of "some ten to fifteen government agents" not inherently coercive), cert. denied, 555 U.S. 901, 129 S. Ct. 228, 172 L. Ed. 2d 174 (2008). In addition, we note that, after Armstrong was arrested and placed in the back of Gonzalez' police car, only two police officers, Lamaine and Gonzalez, were present in the car when Armstrong consented to a search of the apartment.

The defendant also claims that the court erred in not considering the short period of time that had passed between Armstrong's arrest and her consent to a search of the apartment. Our Supreme Court has held that a suspect voluntarily consented to accompany the police to the police station for questioning even though the police sought his consent immediately after he was seized and did not inform him of his right to refuse. See *State* v. *Courchesne*, supra, 296 Conn. 647, 658–60. Armstrong was described as being upset at the time she signed the consent form, but not unreasonably so and no more so than any other person who had just been arrested. She was read her *Miranda* rights before being asked to give permission to search the apartment. After Armstrong gave her consent orally, Gonzalez read

the consent to search form to Armstrong and informed her that she did not have to consent to a search of the apartment. This factor therefore does not weigh in favor of the defendant's argument that Armstrong did not consent voluntarily.

In sum, the totality of the circumstances indicate that the court's findings that Armstrong's will was not overborne by the police and that Armstrong voluntarily consented to a search of the apartment were not clearly erroneous. The court credited the testimony of Gonzalez, and the defendant does not challenge this determination. Armstrong was not threatened or coerced and, while upset that she was under arrest, was informed of her *Miranda* rights and her right not to consent to the search. Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress the evidence seized from the apartment.

The judgment is affirmed.

In this opinion the other judges concurred.