J-S67041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND LEON DIAZ | : | |
| | : | |
| Appellant | : | No. 662 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 28, 2019
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0002329-2017

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED FEBRUARY 24, 2020**

Appellant Raymond Leon Diaz appeals from the judgment of sentence

entered in the Court of Common Pleas of Lackawanna County on February 28,

2019, following a jury trial. We affirm.

In its Opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court

thoroughly and accurately detailed the relevant facts and procedural history

herein as follows:

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This case initiated with the filing of the criminal complaint
on August 17, 2017, and, counseled by a public defender,
Appellant waived his preliminary hearing October 12, 2017 with
the understanding he would enter a negotiated guilty plea. (See,
Petition for the Appointment of New Counsel filed 10/23/2017).
Due to a perceived conflict, the Honorable Judge Michael J.
Barrasse granted Appellant's petition for new counsel, appointing
trial counsel to assume his representation. (Order, J. Barrasse,

---

* Former Justice specially assigned to the Superior Court.

11/3/2017). Counsel filed an omnibus pretrial motion, which Judge Barrasse heard and thereafter denied. (See, Order, J. Barrasse, 3/29/2018; Order, J. Barrasse, 8/20/2018; Memorandum of Law, J. Barrasse, 10/10/2018). Upon discovery of a scheduling conflict, Judge Barrasse assigned Appellant's case to this [c]ourt for trial. After argument, this [c]ourt denied Appellant's motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600 filed November 21, 2018 immediately before trial commenced. (N.T., 12/3/2018, p. 6).

On December 5, 2018, following a bifurcated criminal trial that commenced December 3, 2018, a jury found the Appellant [] guilty of all offenses charged in the instant case. (See, Verdict Slips, filed 12/5/2018). The amended criminal information filed against Appellant included one count of possession of a controlled substance with intent to deliver a quantity of cocaine, in violation of 35 Pa.C.S.A. §780-113(a)(30), two counts of delivery of a controlled substance, cocaine, in violation of 35 Pa.C.S.A. §780-113(a)(30), two counts of criminal use of a communication facility, in violation of 18 Pa.C.S.A. §7512(a), one count of possession of a firearm prohibited, in violation of 18 Pa.C.S.A. §6105(a)(1), one count of possession of marijuana, in violation of 35 Pa.C.S.A. §780-113(a)(31), one count of possession of a controlled substance, in violation of 35 Pa.C.S.A. §780-113(a)(16), and one count of possession of drug paraphernalia, in violation of 35 Pa.C.S.A. §780-113(a)(32). The Commonwealth charged Appellant as set forth above in connection with incidents occurring August 15th and 16th of 2017, on which dates Lackawanna County narcotics investigators conducted controlled drug purchases through the use of a confidential informant (hereinafter "C.I.") then executed a search warrant of Appellant's residence. Due to the Commonwealth's need to present certain evidence this [c]ourt deemed too prejudicial against Appellant to establish the elements of possession of a firearm prohibited, once the jury rendered its verdict regarding all above-indicated drug-related offenses, this [c]ourt proceeded to a second phase of trial with regard to the single firearm charge before the case concluded.

At the time of trial, the Commonwealth first presented the testimony of the C.I., Karl Racavitch, a 30 year old male from West Scranton, Pennsylvania. (N.T., 12/4/2018, pp. 16-18). He discussed his history of drug use, explaining that he used marijuana and synthetic marijuana, commonly referred to as spice for approximately 11 years. Id. at 17-19. He also explained that in August 2017, he was on probation in connection with a felony drug conviction for selling marijuana and spice in 2014. Id. at 18.

At that time, his probation officer having found a small amount of marijuana in his possession, Racavitch reached out to Detective Harold Zech of the Lackawanna County District Attorney's Office, offering to work as a C.I. to avoid a probation violation. Id. at 19. He told Detective Zech that he knew his neighbor, "T," identified as Appellant, to be selling cocaine out of his home. Id. at 19-20. He understood that if he worked as a C.I., he may not incur a probation violation for the small amount of marijuana he possessed and Detective Zech would give him $200.00 to move from his current residence, as he feared Appellant due to having a shared history of drug-crime involvement. Id. In fact, he detailed that on a day during the summer of 2017, he returned home from work to find Appellant on his back porch. Id. at 21. Appellant indicated that he had been tied up and robbed of all of his drugs and asked Racavitch where he could get a gun. Id.

Racavitch testified that he had known Appellant for six or seven months. Id. at 22. They met through mutual friends, and Appellant lived behind him, sharing a backyard area. Id. Racavitch indicated he had been inside Appellant's home "[a]t least 20" times. Id. He described that to enter, he walked up about four steps to "a fenced back porch" then walked "through a kitchen door," through the kitchen, to find a bedroom and a room to the right. Id. at 23. He saw Appellant at the residence each of the "[a]t least 20" times that he went there.
Id.

Turning to August 15, 2017, Racavitch testified that he agreed to participate in a controlled drug purchase from Appellant. Id. at 23-24. At his home, in the presence of Detective Zech, Racavitch placed a call to Appellant seeking "to purchase a ball of crack cocaine," which would weigh approximately 3.5 grams. Id. at 24-25. Detectives recorded the phone call, and the Commonwealth played if for the jury. Id. at 25. About a minute and a half after placing the call, Racavitch went to Appellant's home on North Hyde Park Avenue in Scranton. Id. at 30. Immediately prior, Detective Zech thoroughly searched him and furnished him $220.00 to purchase the crack cocaine. Id. at 31.

Racavitch detailed that when he arrived at Appellant's back porch, Appellant had already been waiting for him. Id. at 33. They walked into the kitchen, they spoke briefly about drugs and the drug business, Racavitch handed Appellant the $220.00, Appellant left the kitchen and returned approximately one minute later with a quantity of crack cocaine. Id. He did not encounter or hear anyone else in the home while there. Id. at 35. Thereafter,

Racavitch returned to his home, met Detective Zech there, handed him the drugs and submitted to another thorough search. Id. at 37.

On August 16, 2017, the next day, Detective Zech again went to Racavitch's home. He again placed a phone call to Appellant, which law enforcement recorded and played at the time of trial. Id. at 39. He requested the same amount of crack cocaine purchased the day before. Id. at 41. Detective Zech again searched Racavitch and provided him $220.00. Id. at 41-42. Within approximately a minute and a half of getting off the phone with Appellant, Racavitch went to Appellant's back porch. Id. at 42-43. Appellant opened "the back door fence" and "kitchen door" with "no shirt on." Id. at 43. Appellant commented that Racavitch appeared nervous. Id. Nonetheless, they went into the kitchen, he gave Appellant the $220.00 Detective Zech provided, and Appellant handed him "[a] little twist tie baggy of crack." Id. at 43-44. Again, he did not encounter or hear anyone else in Appellant's residence. Id. at 44. Upon returning home to Detective Zech, Racavitch handed him the crack cocaine and submitted to a thorough strip search. Id. at 46.

The Commonwealth next called Detective Harold Zech to testify. He detailed his law enforcement background, explained his involvement specifically with the narcotics unit at the Lackawanna County District Attorney's Office, and shared his knowledge about the drug trade as well as criminal investigations into the same. Id. at 55-68. He then corroborated that he met the C.I., Racavitch, through Lackawanna County Adult Probation as he hoped to avoid a probation violation by working with law enforcement. Id. at 68-69. The C.I. indicated that his neighbor, "T," later identified as Appellant, sold drugs out of his residence, located at 662 North Hyde Park Avenue in Scranton. Id. at 69. A law enforcement database check of the individuals known to reside at the given address confirmed Appellant's association therewith. Id.

Having verified the information provided by the C.I., Detective Zech met him to conduct their first controlled purchase on August 15, 2017. Id. at 70. Detective Zech noted the unique nature of the situation in that the C.I. lived directly behind the target drug dealer, Appellant. Id. The C.I. placed a phone call to Appellant in the detective's presence, positively identifying the Appellant as Raymond Diaz, and they agreed to meet at Appellant's home. Id. at 70-71. Before sending the C.I. to the Appellant's residence, Detective Zech performed a strip search of the C.I. and provided him $220.00, having photocopied the bills and recorded the serial number thereon. Id. at 71-72. He then

surveilled and photographed the C.I.'s trip to Appellant's house from a second floor window in the C.I.'s home. Significantly, the Commonwealth admitted into evidence a photograph taken by the detective of the C.I. "being greeted at the doorway by Raymond Diaz" and one of the C.I. "being escorted out by Raymond Diaz." Id. at 80. Once the C.I. returned home, Detective Zech met him in the kitchen, received the quantity of suspected cocaine obtained, and performed another strip search of the C.I. Id. at 81. The detective explained that he conducted a field test of the substance, which yielded a positive result for cocaine, and packaged the same for further testing by the Pennsylvania State Police Crime Lab. Id. at 83.

Detective Zech continued testifying by detailing the events of August 16, 2017. On that date, the detective and the C.I. met at the C.I.'s residence and again arranged for a controlled purchase to take place. Id. at 85. The detective strip searched the C.I., provided him prerecorded cash in the amount of $220.00, sent him on his way to Appellant's home, and surveilled from the second floor vantage point. Id. at 85-86. The Commonwealth admitted a series of photos depicting the C.I. entering Appellant's home then being escorted out by Appellant, shirtless at the time, as described by the C.I. Id. at 89. When the C.I. returned to his house, Detective Zech again met him in the kitchen, received the suspected cocaine, performed a strip search of the C.1., conducted a positive field test, and packaged the evidence for further testing. Id. at 91-92.

Detective Zech explained that after completing two successful controlled purchases of narcotics, he applied for a search warrant for Appellant's residence. Id. at 94. Upon securing one, later in the day on August 16, 2017, he led law enforcement in executing the search warrant at approximately 8:00 p.m. Id. at 95-96. Surveillance detectives watched the residence at 662 North Hyde Park Avenue in anticipation of the search warrant and observed Appellant leaving said residence. Id. at 96-97. Following him therefrom, detectives initiated a traffic stop of Appellant's vehicle. Id. at 97. Detectives detained Appellant, found to have in his possession $1,945.00, including some of the money used in each controlled purchase conducted, an Apple iPhone, and a Samsung flip phone, identified as the target phone bearing the number called by the C.I. on both occasions that he purchases narcotics from Appellant. Id. at 98. Appellant reportedly immediately denied living at the 662 North Hyde Park Avenue. Id. at 99.

Detective Zech indicated that upon executing the search warrant at Appellant's residence, law enforcement encountered Joisey Blake, who[] was Mirandized and who[] became "extremely irate" with the detective. Id. at 99-100. Nonetheless, the search continued, and after a canine indicated the presence of narcotics, police found a black duffel bag containing in excess of 20 grams of cocaine and a Taurus 38 Special Revolver in a room off of the bedroom. Id. at 101-103. Additional items located included sandwich baggies, generally used to package controlled substances, a safe containing sandwich baggies and other drug paraphernalia, men's clothing and shoes, a prescription bill bottle bearing Appellant's name and filled August 4, 2017, and a small amount of marijuana in the dresser within the same area where law enforcement recovered all other items. Id. at 110-115. Detective Zech concluded his direct testimony with some discussion of the relevance of the items seized from Appellant's residence, based on his training within the field of narcotics investigations, and in reference to establishing that Appellant indeed resided at the property searched. Id. at 115-128.

The Commonwealth next presented the testimony of Jennifer Libus, forensic scientist for the Pennsylvania State Police at their Wyoming Regional Laboratory in Pittston, Pennsylvania. Id. at 130. She confirmed that the evidence submitted for testing, obtained from Appellant by the C.I. on August 15 and 16, 2017, contained approximately three and 3.13 grams of cocaine, respectively. Id. at 136-138. She further indicated that evidence seized from the black gym bag located in Appellant's residence and submitted for testing contained various quantities of cocaine. Id. at 138-141. Finally, she testified that the vegetable matter found in Appellant's dresser drawer and submitted for testing constituted approximately 1.24 grams of marijuana. Id. at 142.

The Commonwealth next called Detective Vincent Butkiewicz of the Lackawanna County District Attorney's Office. Id. at 172. He testified as to his role as a canine handler in the narcotics unit. Id. at 173. Appellant stipulated that Detective Butkiewicz's canine alerted him to the presence of narcotics in the residence searched. Id. at 174-175. The detective further confirmed that he did not encounter any other male or items belonging to any other male within the residence. Id. at 177.

Finally, prosecutors presented the testimony of Detective Tom Davis, another member of the Lackawanna County District Attorney's Office narcotic unit. Id. at 180-181. He indicated that he participated in the investigation regarding Appellant's drug activity by assisting with surveillance and in executing the search

warrant on August 16, 2017. Id. at 182-183. When Appellant left his residence prior to law enforcement's execution of the search warrant, Detective Davis followed him in his vehicle and initiated a traffic stop. Id. at 183-184. Detective Davis explained that at the time of the traffic stop, he and assisting detectives took Appellant into custody without incident, read him his Miranda Rights, and informed him of the search warrant being executed at 662 North Hyde Park Avenue. Id. at 184. Appellant indicated that he did not live on the first floor but lived on the second floor at said address. Id. A search of his person yielded a total of $1,945.00 and a smart phone, and a search of his vehicle resulted in recovering a Samsung flip phone. Id. at 185. Detective Davis transported Appellant back to 662 North Hyde Park Avenue and learned that following the search performed, investigators found over 20 grams of cocaine, a silver Taurus 38 caliber handgun, drug packaging materials, and a pill bottle bearing Appellant's name. Id. at 186-187.

Thereafter, the Commonwealth rested with respect to the drug related charges, and Appellant commenced his case-in-chief calling witness Joisey Blake, his mother. Id. at 190. She indicated that her daughter lived in the second floor apartment at 662 North Hyde Park Avenue and her sister lived in the first floor apartment at the same address. Id. at 191. She testified that her sister's friend Josh and his two-year-old child lived at the apartment with her. Id. at 192. On the day of the search warrant, she went to the first floor apartment to retrieve her phone charger. Id. at 191-192. Her sister was not home as she had been visiting their mother in Philadelphia at the time. Id. at 192-193. Josh had apparently stopped living in the first floor apartment as her sister no longer wanted him there. Id. at 193. Blake indicated she saw him collecting his belongings approximately two weeks after the execution of the search warrant in this case. Id. at 193.

Appellant next testified on his own behalf. He stated that on August 15 and 16, 2017, he and his aunt's boyfriend Josh had been playing a video game when Josh asked him to let the C.I. in and out of the apartment. Id. at 202-203. Appellant explained that the C.I. would occasionally come over to buy things from Josh. Id. He claimed to live at 3027 North Taney Street in North Philadelphia, not at 662 North Hyde Park Avenue. Id. at 203. He maintained that Josh lived at the apartment. Id. He denied ever having a phone call with the C.I.; he denied any knowledge regarding the Samsung flip phone located in his vehicle when stopped by law enforcement; and he denied having any "buy money" comingled with the $1,945.00 recovered from his person.

Id. at 205-207. Appellant did, however, ultimately acknowledge ties to the residence located at 662 North Hyde Park Avenue through family members. Id. at 210.

Once Appellant rested his case, the Commonwealth re-called Detective Zech in rebuttal. He indicated that no evidence suggested that a minor child resided in the apartment at issue. Id. at 215. Detectives did not find any baby clothes or toys, and they did not find any mailings to a Josh or other evidence of another male living in the home. Id. at 215-216.

After closing arguments relative to the first phase of trial, the jury returned a verdict of guilty as to all crimes charged: possession with intent to deliver cocaine, two counts of delivery of cocaine, two counts of criminal use of a communication facility, possession of marijuana, possession of cocaine, and possession of drug paraphernalia. The Court proceeded to the second phase of trial, specifically regarding the charge of possession of a firearm prohibited.

The Commonwealth called Lackawanna County Clerk of Judicial Records Mauri Kelly to testify. (N.T., 12/5/2018, p. 63). She detailed that in a Lackawanna County criminal case docketed at 2012 CR 756, Appellant [ ] entered a guilty plea July 2, 2013 to felony charges of delivery of a controlled substance and possession with intent to deliver a controlled substance. Id. at 65-66. She further indicated that Appellant received a sentence of incarceration of 27 to 60 months with a period of probation to follow. Id. at 66.

Finally, the Commonwealth called Lackawanna County Detective Chris Kolcharno to testify as to his limited involvement in Appellant's case. Id. at 67-68. Specifically, on September 7, 2018, Detective Zech requested that Detective Kolcharno test fire the weapon seized at the time of the search warrant executed at 662 North Hyde Park Avenue. Id. at 68-69. He indicated that the Taurus 38 caliber revolver recovered from Appellant fired as expected and was indeed operational. Id. at 69-71.

After the close of evidence and following this [c]ourt's instruction, the jury returned a guilty verdict as to the possession of a firearm prohibited charge. On February 28, 2019, this [c]ourt sentenced Appellant with respect to all charges to an aggregate term of incarceration of 138 months to 280 months in a state correctional institution. (N.T., 2/28/2019, p. 11).

Trial Court Opinion, filed 8/22/19, at 3-12.

On March 8, 2019, Appellant filed his Motion for Reconsideration of Sentence, and the trial court denied the same on April 16, 2019. On April 24, 2019, Appellant filed a timely notice of appeal with this Court, and both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

In his Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) Appellant raises nine claims for relief. In his appellate brief, Appellant presents two issues for our review:[1]

1. Did the trial court err in failing to grant Appellant's motion for suppression of evidence based upon deficiencies in the affidavit of probable cause supporting the issuance of a search warrant for the premises located at 622 North Hyde Park Avenue, Scranton, Pennsylvania where said affidavit relies almost exclusively upon statements made by a confidential informant whose veracity was not established?

2. Was the evidence presented at the time of trial sufficient to establish constructive possession of the contraband identified in Counts 1 (possession of a controlled substance with the intent to deliver), Count 6 (possession of a firearm prohibited); Count 7 (possession of marijuana) and Count 8 (possession of a controlled substance [cocaine]) in the amended criminal information where the uncontroverted evidence established

_____

[1] In his concise statement, Appellant presented the trial court with additional challenges to the sufficiency of the evidence and to the weight of the evidence. Appellant also argued the trial court had erred in failing to strike certain jurors for cause. He has abandoned these claims on appeal; therefore, we find them waived. **Commonwealth v. Dunphy**, 20 A.3d 1215, 1218 (Pa.Super. 2011) (issues raised in Pa.R.A.P. 1925 concise statement that are not developed in appellate brief are abandoned); **see also Commonwealth v. Woodward**, 129 A.3d 480, 509 (Pa. 2015) (holding that "where an appellate brief fails to . . . develop an issue in any [] meaningful fashion capable of review, that claim is waived[]").

that multiple individuals had access to the area where said contraband was located?

Brief for Appellant at 5 (unnecessary capitalization omitted).

When considering the suppression court's denial of Appellant's motion to suppress evidence, we employ a well-settled standard of review:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Bernard***, 2019 WL 4180655, at * 3 (Pa.Super. Sept. 4, 2019) (citation omitted).

Appellant posits "the failure of law enforcement to corroborate the information provided by the Confidential Informant renders the Affidavit of Probable Cause defective." Brief of Appellant at 23. Appellant submits the Affidavit of Probable Cause does not contain facts bolstering the then confidential informant's veracity. ***Id***. Appellant contends officers did not attempt to verify the phone number the confidential informant had provided

- 10 -

to them belonged to Appellant, and he further avers that police did not witness the drug transaction. Appellant also stresses officers admitted that other individuals lived at that location. *Id*.

With regard to law enforcement's reliance upon a confidential informant, the **Bernard** Court has stated:

> An arrest or 'custodial detention' must be supported by probable cause:
>
> > Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime.
> > The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.
> > Information received from confidential informants may properly form the basis of a probable cause determination. Where the officers' actions resulted from information gleaned from an informant, in determining whether there was probable cause, the informant's veracity, reliability and basis of knowledge must be assessed.
> > An informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity.
>
> **Commonwealth v. Goldsborough**, 31 A.3d 299, 306 (Pa. Super. 2011) (cleaned up). Our Supreme Court "held that a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." **Commonwealth v. Clark**, 611 Pa. 601, 28

- 11 -

A.3d 1284, 1288 (2011) (citation omitted); ***see also Commonwealth v. Sanchez***, 589 Pa. 43, 907 A.2d 477, 488 (2006), *quoting **United States v. Tuttle***, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information."); ***see also Commonwealth v. Manuel***, 194 A.3d 1076, 1083 (Pa.Super. 2018) (citation omitted) (same).

***Id***.

Herein, the suppression court discussed relevant caselaw and concluded, *inter alia*, that law enforcement independently had corroborated the confidential informant's tip based upon the following evidence:

> Furthermore, an informant's tip may constitute probable cause to arrest or search where police independently corroborate tip, or where the informant has provided accurate information of criminal activity in past, or where the informant participated in criminal activity. **Commonwealth v. Luv**, 735 A,2d 87 (Pa. Super. 1999); **See also**, **Commonwealth v. Gray**, 503 A.2d 921, 926 (Pa. 1985) (the court can take into consideration the reliability of the tip along with the corroborative efforts of the officers when determining if probable cause has been established).
>
> The United States Supreme Court in [***Illinois v.***]Gates [462 U.S. 213 (1983)] recognized that, in instances where the affidavit is deficient in establishing the informant's veracity, reliability, or basis of knowledge, a strong showing with respect to the other elements-or the existence of some other indicia of reliability may compensate. **Illinois v. Gates**, 462 U.S. 213 (1983). "A determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." **Commonwealth v. Luv**, 735 A.2d 87, 90 (Pa. 1999)
>
> In **Commonwealth v. Luton**, the Pennsylvania Superior Court found a police-conducted "controlled buy" sufficiently corroborated neighbors' complaints about illegal sales of narcotics at defendant's home and provided probable cause for issuance of warrant to search defendant's home. **Commonwealth v. Luton**, 672 A.2d 819 (Pa. Super, 1996),

Finally, in **Commonwealth v. Baker**, the Pennsylvania Superior Court found the informant's allegations that the defendant was selling drugs, corroborated by police officer's first hand observations, where the informant entered the residence, and returned with cocaine, were sufficient factors to establish probable cause to sustain a search warrant. **Commonwealth v. Baker**, 615 A.2d 23 (Pa.Super. 1992).

In the present case, this [c]ourt finds sufficient probable cause to support the issuance of a search warrant. The CI provided Det. Zech with a physical description of [Appellant], the [Appellant's] cell phone number, as well as [Appellant's] home address, (N.T., p. 5). The CI identified [Appellant] via photograph. (N.T., p. 6). The CI then provided consent to have his or her communications with [Appellant] intercepted and recorded. (N.T., p. 7). As such, Det. Zech listened to the CI call [Appellant] and arrange a purchase of cocaine at [Appellant's] residence. (N.T., p. 7). While additional officers established surveillance around the [Appellant's] residence, Det. Zech searched the CI and provided a sum of prerecorded serialized money to use in the drug transaction. (N.T., p. 7). Meanwhile, Det. Condrad observed [Appellant] enter his residence at 662 North Hyde Park Avenue. (N.T., p. 7-8). Simultaneously, [Appellant] called the CI and directed the CI to his residence. (N.T., 7-8). Det. Zech through surveillance, he observed the CI walk to the rear north end of 662 North Hyde Park Avenue. (N.T., p. 8). Thereafter, he viewed the CI exit the residence, and surrender a quantity of cocaine. (N.T., p. 10).

The next day, following the same protocol with Det. Zech, the CI conducted another controlled buy at [Appellant's] residence and surrendered a quantity of cocaine. After completing two controlled buys, as well as the CI's identification of [Appellant], Det Zech applied for and obtained a search warrant of 662 North Hyde Park Avenue. (N.T., p. 9, 10-11, 12-13). Officers entered the residence, they located a pill bottle bearing [Appellant's] name on a bedroom dresser, a small amount of marijuana, as well as men's clothing and sneakers throughout in the apartment. (N.T., p. 15). A K-9 search resulted in a positive identification for narcotics in a black gym bag. (Affidavit of Probable Cause, p, 1). Inside the gym bag, officers located a large twist bag containing twenty-three (23) grams of powder cocaine, one twist bag containing two (2) grams of powder cocaine, two twist bags containing two (2) grams of crack cocaine, and men's apparel. (Affidavit of Probable Cause, p. 1). Near the gym bag, officers discovered an unloaded Taurus .38 revolver. (Affidavit of Probable

Cause, p. 1). Subsequently, officers checked [Appellant's] criminal record and learned of his status as a convicted felon prohibited from owning a firearm. (Affidavit of Probable Cause, p. 1-2). In addition, officers located a safe in the living room, which contained small plastic zip lock bags and plastic sandwich bags. (Affidavit of Probable Cause, p. 2).

Therefore, this [c]ourt finds sufficient probable cause to support the issuance of a search warrant regarding [Appellant's] residence.

Suppression Court Opinion, filed 10/10/18, at 7-8.

Based upon our standard of review and the evidence presented at the suppression hearing, we find no abuse of discretion or error of law in the suppression court's denial of Appellant's suppression motion. The confidential informant provided Detective Zech with a detailed physical description of Appellant and an address at which he was residing and from which he was selling cocaine. N.T. 8/8/18, at 6. Detective Zech also obtained a cellular phone number for Appellant and learned a controlled purchase could be made by contacting Appellant at that number. *Id*. at 6-7. The confidential informant contacted Appellant and arranged to purchase cocaine from him in Detective Zech's presence. *Id*. at 7.

Surveillance was established, and Detective Zech accompanied the confidential informant to an area near the residence. The confidential informant was subjected to a strip search and provided with a quantity of marked currency to make the purchase. Detective Zech intercepted a second phone call directing the confidential informant to come to the residence, and Detective Condrad witnessed Appellant enter the same. *Id*. at 7-8. Within

minutes, Detective Zech confirmed a narcotic transaction had occurred. *Id*. at 8. This routine was repeated for a second purchase. *Id*. at 9-10.

Viewing the totality of the evidence in a common sense, non-technical manner, we conclude that law enforcement had probable cause to believe that criminal activity likely was afoot. Police were able to corroborate twice that Appellant acted in conformity with communications in which he and the confidential informant had engaged. Moreover, the confidential informant confirmed that he had prior drug dealings with Appellant. *See Commonwealth v. Clark*, 611 Pa. 601, 28 A.3d 1284, 1288 (2011) (informant's tip may constitute probable cause where the informant himself participated in the criminal activity). Therefore, suppression was not warranted, and Appellant's first issue lacks merit. *See Bernard, supra*.

Appellant next challenges the sufficiency of the evidence to support the guilty verdicts on Count 1 (PWID); Count 6 (Possession of a Firearm Prohibited); Count 7 (Possession of Marijuana); and Count 8 (Possession of a Controlled Substance) of the Amended Information. Specifically, Appellant maintains that Appellant had neither actual nor constructive possession of the contraband, a necessary element of each crime, because it was not found on his person. Brief of Appellant at 25. Appellant maintains that the record is "totally devoid" of any evidence suggesting he had dominion and control over the gun and drugs inside the duffel bag and that it contains nothing even to suggest that Appellant knew illegal narcotics and a firearm were located in an adjacent room. *Id*. at 26-27.

This Court's standard of review of a challenge to the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) (citation omitted), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011).

When reviewing Appellant's challenge to the sufficiency of the evidence with regard to a PWID conviction, we are mindful that

> [t]he Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver.
> In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver.

***Commonwealth v. Lee***, 956 A.2d 1024, 1028 (Pa.Super. 2008), *appeal denied*, 600 Pa. 744, 964 A.2d 894 (2009).

Counts 7 and 8, concern Section 780–113 of The Controlled Substance, Drug, Device and Cosmetic Act, which states in relevant part:

**(a)   The following acts and the causing thereof within the Commonwealth are hereby prohibited:**

(16)  Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

\* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. §§ 780–113(a)(16), (30).

Finally, Appellant challenges his convictions of persons not to possess a firearm under 18 Pa.C.S.A. § 6105, which, in relevant part, provides the following:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a)   Offense defined.**—

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not

- 17 -

possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\*\*\*

**(c) Other persons.--**In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

\*\*\*

(2) A person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

18 Pa.C.S.A. § 6105(a), (c).

Appellant does not dispute that he is prohibited from possessing a firearm; however, he contends the Commonwealth failed to prove that he actually possessed the firearm. We agree with Appellant that possession is an element of the firearms offense and that the firearm was not discovered on Appellant's person so as to establish actual possession. *See **Commonwealth v. Macolino***, 503 Pa. 201, 469 A.2d 132, 134 (1983) (holding that actual possession is shown by proving the contraband was found on the defendant's person). However, we disagree with Appellant's claim that there is "no evidence to even suggest that [ ] Appellant knew the gun and duffle bag were present in the adjacent room." Brief for Appellant at 27.

Rather, to establish the element of possession, this Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Parrish***,

191 A.3d 31, 36 (Pa.Super. 2018) (citation omitted), *appeal denied*, 202 A.3d 42 (2019). We previously have determined:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Parrish*, 191 A.3d at 36–37 (internal citations and quotations omitted).

Illegal possession of a firearm may be established by one's constructive possession thereof. *Commonwealth v. McClellan*, 178 A.3d 874, 879 (Pa.Super. 2018). In addition, the power and intent to control contraband does not need to be exclusive to an appellant in order to find constructive possession. Our Supreme Court has recognized that "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 611 Pa. 381, 26 A.3d 1078, 1094 (2011) (citation omitted). Further, contrary to Appellant's suggestion, the Commonwealth was permitted to establish Appellant's constructive possession *via* circumstantial evidence and the reasonable inferences that arise therefrom. *Parrish*, *supra*.

Herein, Appellant's argument with respect to the possession element of the charged crimes suffers from a fatal flaw- he views the evidence presented at trial in the light most favorable to him. For example, he stresses that others had access to the apartment. Brief of Appellant at 25-27. This position ignores the fact that constructive possession is not necessarily exclusive. *Johnson*, *supra*. Moreover, to the extent Appellant suggests the Commonwealth was required to prove Appellant actually possessed the contraband, he is in error. *Parrish*, *supra*.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that the evidence sufficiently establishes his constructive possession of the firearm and drugs the detectives seized as Appellant had the ability and intent to exercise control over the contraband. As the trial court relevantly indicated:

> At the time of trial in Appellant's case, the C.I. testified that he informed Detective Zech that his neighbor, "T," identified as Raymond Diaz, Appellant, sold cocaine. out of his home. (N.T., 12/4/2018, pp. 19-20). The C.I. testified that he had known Appellant for six or seven months. Id. at 22. They met through mutual friends, had a history of being involved in drug related crime together, and Appellant lived behind him, sharing a backyard area. Id. In fact, he detailed that on a day during the summer of 2017; he returned home from work to find Appellant on his back porch to ask C.I. where he could get a gun, explaining that he had recently been tied up and robbed of his drugs. Id. at 21.
> C.I. indicated he had been inside Appellant's home "[a]t least 20" times, and he saw Appellant at the residence each time he went there. Id. at 22-23. He described that entering from the back, he would walk up approximately four steps to a "fenced back porch," walk through the kitchen to a bedroom with a room "like a closet" to the right. Id. at 23. He explained that on both August

15 and August 16, 2017, having spoken to him on the phone, C.I. went to Appellant's apartment to complete the two controlled purchases in this case. Id. at 32-34, 42-44. With respect to the purchase on August 15th, C.I. waited in the kitchen while Appellant went into another room, reappearing "not even a minute later" with a quantity of crack cocaine. Id. at 33-34. He further indicated that Appellant went into the room to the right to retrieve the cocaine on that occasion. Id. He did not encounter or hear anyone else in the home while there. Id. at 35, 44.

Detective Zech testified that a law enforcement database check of the individuals known to reside at 662 North Hyde Park Avenue confirmed Appellant's association with the address. Id. at 69. In fact, photographs of Appellant meeting C.I. at the back door on the dates of the controlled purchases were admitted into evidence. Detective Zech also explained that prior to executing the search warrant in this case, surveillance detectives watched the residence at 662 North Hyde Park Avenue and observed Appellant leaving said residence. Id. at 96-97. Following him therefrom, detectives initiated a traffic stop of Appellant's vehicle, detained him, and seized from him $1,945.00, including some of the money used in each controlled purchase conducted, an Apple iPhone, and a Samsung flip phone, identified as the target phone bearing the number called by the C.I. on both occasions that he purchases narcotics from Appellant. Id. at 97-98; see also, 182-187. Finally, Detective Zech indicated that the search of the residence yielded a black duffel bag containing in excess of 20 grams of cocaine and a Taurus 38 Special Revolver in the room off of the bedroom, "the makeshift walk-in closet." Id. at 101-103, 117. Additional items located included sandwich baggies, generally used to package controlled substances, a safe containing sandwich baggies and other drug paraphernalia, men's clothing and shoes, a prescription bill bottle bearing Appellant's name and filled August 4, 2017, and a small amount of marijuana in the dresser within the same area where law enforcement recovered all other items. Id at 110-115. Detectives did not find evidence of any other male residing within the premises searched. Id. at 177; 215-216. No evidence suggested any other alleged or verified member of the household sold or possessed any of the contraband recovered.

Viewing it in the light most favorable to the Commonwealth, this [c]ourt finds that the Commonwealth presented more than sufficient evidence to establish that Appellant possessed a quantity of cocaine, possessed a quantity of cocaine with intent to deliver, possessed a quantity of marijuana, and possessed a

firearm. The C.I. testified that Appellant resided in the 662 North Hyde Park apartment, having been there for the purpose of conducting drug transactions on numerous occasions. Detectives verified Appellant's connection to the address and corroborated his drug trafficking activity with photographic evidence and having seized a sum of cash which included some of the buy money used in the controlled purchases conducted in this case as well as the cell phone bearing the number the C.I. used to contact Appellant to establish the drug transactions. Detectives found no evidence of any other individual's involvement in the sale of illegal drugs from the residence and recovered a substantial amount of cocaine, the marijuana and the gun from a room that appeared to be inhabited by Appellant, there being men's clothing and a prescription bill bottle of his therein. Though the evidence did not suggest anyone else had access to the drugs or the gun at the relevant time, pursuant to the doctrine of constructive possession, accessibility of others does not preclude possession by one. This [c]ourt, therefore, submits that Appellant's convictions on the instantly challenged offenses should be affirmed.

Trial Court Opinion, filed 8/22/19, at 19-22.

We agree with the trial court that when viewed in its totality, the aforesaid direct and circumstantial evidence presented at trial along, with the reasonable inferences that arise therefrom, reveals that Appellant had the power and intent to control the cocaine, marijuana and revolver. The confidential informant testified he watched Appellant enter a room and emerge therefrom with a quantity of crack cocaine which he then sold to Appellant. Detective Zech's strip search of the confidential informant within minutes thereafter revealed the cocaine. Clearly, this evidence demonstrated that Appellant participated in drug-related criminal activity, the sale of cocaine to the confidential informant, and established Appellant possessed the cocaine with the intent to deliver the same to the confidential informant.

In addition, Detective Zech testified he discovered a prescription bottle bearing Appellant's name along with men's clothing and shoes in the same area where the marijuana, revolver, and other drug paraphernalia were found. Officers found no evidence that may have linked another male residence to that room. It was reasonable for a jury to infer from this evidence that Appellant was connected to, and therefore had constructive possession of, the area of the home wherein marijuana and a firearm was kept. Thus, we conclude the court provided a well-reasoned basis for its determination that the Commonwealth presented sufficient evidence to support the possession element and convictions of counts one, six, seven and eight. Accordingly, we conclude Appellant is not entitled to relief on any of his challenges to the sufficiency of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/24/2020